Good morning, Your Honors. May it please the Court, my name is Allison Westfall-Kong and I represent the United States. I'm planning to reserve about two minutes for rebuttal. The defendant in this case was a serial manufacturer of machine guns, fully automatic weapons that are so inherently dangerous that it's unlawful for anyone to possess them without the proper registration. And defendant, of course, was not just barred from possessing machine guns, but any gun, because he was a felon based on two prior felony convictions for possessing or transporting machine guns. And still undeterred, in this case, without any hesitation or reluctance, defendant manufactured and sold five machine guns, two to a confidential informant, three to an undercover federal officer, and it was as a result of that conduct and his criminal history, he faced a guidelines range of 130 to 162 months. He only did one gun a month, didn't he? Well, in this case, although... In a small time, manufacturer, maybe it's more like a hobby. Well, he had done it on multiple occasions and the statements on the recordings suggest that the CI and the undercover were not his only customers. And so, you're correct that we have about one gun a month in this case, but his own statement suggests that he's doing this with more regularity and respectfully, given how dangerous machine guns are, I think even manufacturing and selling one gun is one too many. And in this case, of course, he also had two priors for machine gun possession that he... on that second, his second machine gun conviction, which was a federal conviction, it was the basis of a parole search where they found the hallmarks of a manufacturing operation. Multiple receivers, silencers, parts, gun manuals that do suggest this larger operation. Counsel, what I'm wrestling with in this case is this. What it looks like is the defendant signed a plea agreement, a guilty plea. Laid out a whole bunch of facts. Judge Reel handed down a sentence and cited certain things that were directly opposite of what the defendant had pleaded to in the guilty plea. That's exactly right. So we have this. Then you have the question of, under Cardi, clearly erroneous, but on the other hand, the district flexibility in terms of variance and the like, and under 5553A. Does the fact that Judge Reel, at least on the record, seemed to rely upon things which are simply not true in accordance with the guilty plea, is that a per se reversal? Send it back for resentencing? Or can we understand that Judge Reel maybe misunderstood certain things, but this is the way he would sentence, based upon criteria that are not required to be set out, such as in a 5353A analysis? I think that the extent of the variance is critical here. The fact that this is a 106-month departure from the low end of the under Gaul, the district court's justification has to be incredibly compelling to justify that departure. And here, the only justification that is given is based on clearly erroneous facts. You mean incredibly? You mean great? Yes. Oh, okay. Yes. Yes, Your Honor, based in the record, factual, correct. And in Gaul, the Supreme Court has made clear that the reliance on clearly erroneous facts is significant procedural error. And to the extent that any harmlessness argument could be made, I think, one, it would probably have to be a guideline sentence, and two, there would have to be some other justification there beyond the clearly erroneous facts. And here, the district court doesn't do that. It recites some of the generic 3553A factors with no analysis whatsoever. Is there any minimum sentence involved here so that if we just send this back and Judge Reel looks at it, is there a minimum sentence involved that would automatically get it above what the defendant was sentenced to in this case? Or is it all discretion? In other words, the defendant pleaded guilty to certain crimes. Correct. Among the crimes, is there one or more that has a minimum sentence requirement that was in excess of what the judge actually imposed here? No, Your Honor, there's no mandatory minimum. Okay, so no mandatory minimum at all. No mandatory minimum. Why do you think that Judge Reel departed so dramatically from the initial guidelines computation? So, Your Honor, just to be honest, I think it's based on I think the timeline is interesting here. So, if Your Honors recall, in February of 2013, before the defendant absconds from pretrial supervision, there was a motions hearing. And at that hearing, Judge Reel is incredibly dismissive, correctly in the government's view. Greatly dismissive, not unbelievably dismissive, right? Correct. You're using incredibly as a quantitative adjective, right, rather than indicating that we're not to believe what you're saying. Yes, I apologize, Your Honor. So, the court was dismissive of that claim, and in fact found that the defendant had presented no evidence that he lacked predisposition. Then the defendant absconds from pretrial supervision for about 19 months, and then he's sentenced two years later. While the defendant has absconded from pretrial supervision, the government filed an indictment in a reverse stash house case that was assigned to Judge Reel. And that also involves the ATF, which is the same agency. And that was September 2013. And then in, I believe, March of 2014, when some of these defendants in the reverse stash house case are supposed to be sentenced, Judge Reel expresses concern about outrageous government conduct, and ultimately dismisses the indictments post-guilty plea. And that's actually the subject of a separate government appeal. But anyway, so after that happened, in September of 2014, after the stash house cases have been dismissed by Judge Reel, the defendant is re-arrested. He's then sentenced in February 2015. So in the government's view, the only thing that's changed about this case is an aggravating fact. The defendant has absconded for 19 months, and the court has presented with all this new information, both in the PSR, in the defendant's own sentencing letter, in the defendant's guilty plea, that make it even more clear that he wasn't the victim of any entrapment. And so it appears that the court's distaste for the ATF, based on this other case, which the government also believes is unjustified, had infected its decision here. There's nothing directly in the record of that, but I think the timeline suggests that. Ms. Kong, your opponent's going to come up in a minute, and it would help him if you would tell us now what you think our bottom line should be in this case, if we should disagree with your position. Well, so the only claim that we have raised in this appeal is that the court relied upon clearly erroneous facts, and that that error was not very substantial variance. And so the government is asking that the court vacate the sentence based on that procedural error, and remand for resentencing. To the same judge. We have not affirmatively requested reassignment, Your Honor. That is something that is an extraordinary remedy. It requires approval of the Solicitor General. But we do believe a very serious error has occurred here. He essentially made statements that not only contradicted the record, defendant's statements on recorded calls, defendant's change of plea hearing, defendant's own sentencing letter, but contradicted his own findings at the February 2013 hearing. Okay. Thank you very much. Thank you. Good morning, Your Honors. May it please the court, my name is Ed Robinson. I represented Mr. Davis at the sentencing. I did not represent him in the motions hearing in front of Judge Reel prior to his guilty plea. I did represent him on the guilty plea. Judge Ferris, you bring up, thank you for framing my position for me. The only thing before this court is whether or not the district court, Judge Reel, committed significant procedural error. And if this court looks at the two statements that he gave at the end of the second sentencing hearing, excuse me, that Mr. Davis, the allegations and guns come from the informant, taken in a vacuum, that's not true. That would be clearly erroneous. But what I have asked the court to do, and I suggest that in the reply brief by the government they've acknowledged that this issue has to be addressed, is that Judge Reel was talking about reasons for his sentence. So if we're talking about Judge Reel's reasons for Mr. Davis's sentence, then we're not talking about a finding of clearly erroneous facts. We are talking about whether or not the sentence is procedurally sound. And if it is procedurally sound, the abuse of discretion standard of review applies. Judge Bea, you asked the government about maybe the extent of the departure. It's a variance. But for the purpose of this argument, that type of inquiry goes to the substantive reasonableness. Judge Bea isn't going to tell you, but this is the second time somebody's mispronounced his name. I apologize. Yes. I am 56, and my car didn't break down on the way to court this morning. And I would fail the grammar exam as well. Excuse me, Your Honor. Is your argument that we should disregard the statement, the defendant was not in the business of guns, because sure, that's not true, that's not accurate, he was supposed to depart, not a fact upon which he was departing? Yes, and if I may, looking at Carty, Carty talks about how 3553C of Title 18 requires that the court give a statement of reasons. And that reason has to occur, and argued twice at both hearings, I directed the court to the McClellan decision from this circuit, which deals with imperfect entrapment. Now, imperfect entrapment under McClellan and Suarez does not require a finding of predisposition. Mr. Davis did not get an instruction for entrapment. And I would suggest rightfully so, because his prior convictions clearly indicate that he's predisposed. But for a sentencing argument that is specifically tailored to the 3553 analysis, the nature and circumstances of the offense, it's the aggressive government use of this particular informant that Judge Reel did not give a clear record for reasons. And the language says, it would be most helpful if it came from the bench. Judge Reel did not give anything that was meaningful at the end of the second sentencing hearing, other than to say, this is nothing to be proud of. But when the court goes back and looks through the second sentencing hearing, my position paper on behalf of Mr. Davis, the specific questions that Judge Reel asked the government to brief with respect to this particular informant was 28 arrests, 14 convictions, got a pass for a very serious state case, paid money by the ATF to work on the Mr. Davis case. It's clear that Judge Reel has tethered his, as I've characterized them, reasons for this variance to a 3553 factor. And the law in this circuit says that imperfect entrapment was a basis for a departure when the guidelines were mandatory under Kimbrough, under Pepper. The court engages in a broad inquiry into all the I can't really follow you as to imperfect entrapment when on ER 58 in the plea agreement, the factual basis to which your client agreed and which you agreed, it reads as This isn't information that came from a confidential informant. This is an admission in writing of your client's doing business in machine guns. And he did business in machine guns, and we're not disputing that. But prior to this particular informant with whom Judge Reel was so concerned that he tethered his variance to the imperfect entrapment reason, the informant had traded, through a middleman, drugs for guns. The government acknowledges that. And this is what aggressive type of government behavior that would support the variance. Mr. Robinson, do you recognize that this is a case that needs to be vacated and remanded? I don't, Your Honor, and the reason that I don't is because I think that we are in danger here of taking the harmless review or question, converting it into a substantive, unreasonable review, which is not what the government raised on appeal. And if we are talking about whether or not sufficient reasons have been given by the judge based upon the entirety of the record, which Cardi allows for, and it's tethered to a recognized reason under 3553 for a variance, then we are left with the abuse of discretion standard with respect to the procedure used. If that's the case, then this Court does not even reach the degree of the saying that a percentage analysis of that variance was not an acceptable means to determine the substantive reasonableness of the variance because it took the abuse of discretion standard and heightened it. And so when the government refers to an incredibly compelling reason, that is not what the Supreme Court said. Counsel, let me ask you this. I've got GER 162, 163 in front of me. I see what Judge Reel said. He clearly is talking about 3553A. But I'll give you this say there were factors 1, 2, 3 that were totally contrary to the guilty plea, but he included them in a 3553A analysis. What do we do with that? Is that an abuse of discretion where the judge is obviously in clear error of the facts of the case? What do we do with that? In your hypothetical, Judge Smith, you'd have to That's not what we have here. And Carty says look to the entire record. Best to have the reasons come from the bench. But if they don't come from the bench, look to the entire record. The only thing that Judge Reel was concerned about, ordered briefing on it, heard argument on it, under 3553C, which is what he's required to the court feels that the defendant was not in the business of guns, which is most generally the problem of the ATF, and that all of the allegations and guns involved in this case came from the presence of the confidential informant, which is nothing to brag about. Well, that's what he relied upon. Now, when you look at the guilty plea, none of that's So what do we do with that? You're suggesting that the judge is reasoning, he's just, you know, let him reason, he has the ability to do that under 3553A too, and we just let it be? Is that your position? Two responses, if I may. First response is no, look to the entire record, and it's clear the only thing that Judge Reel is concerned about, the only thing, and he's very specific in his concerns, direct briefing for the government on this concern, is the use of this specific informant. Ms. Westphal-Kong gave the court some history outside of the record. I was involved in the Stash House robbery cases as well. I understand what Judge Reel's concern was. This is not in the record, but Judge Reel's concern is with the ATF setting up the cases in those reverse sting operations, use of informants, and so when Judge Reel says what he says about Mr. Davis is not in the business of guns and he makes reference to the ATF in his statements on the record, I think it's clear from what we know that Judge Reel does not like what's going on with the reverse. Well, let's say all that's true. As my colleague has quoted, the guilty plea, which your client signed, putting aside any confidential informant, this is not some shadowy deal where it may or may not be true and the guy maybe doesn't get paid or whatever. The reality is he signed a document, his own hand admitting the allegations that are the guts of what we're talking about here. How do we reconcile that? Well, you can't reconcile in a vacuum Judge Reel's statement that this case is not about guns. You just can't do that. And it would be foolish for me to tell you otherwise. Because as you say in your right, all the evidence suggests, it establishes clearly through a confession in the factual basis that Mr. Davis was dealing in guns. But with respect to the imperfect entrapment basis for a variance, again, predisposition is not— But he didn't even talk about that. I mean, you say, and I gather your opposing counsel is aware that there was this concept in the other case. But he didn't say, didn't talk about entrapment in this case, at least in his colloquy, if you will. No, he didn't. And he had this plea. Let me back up. When I say, no, he didn't, I mean, this requires some gymnastics, mental, but going back through the entire record, when Judge Reel says, this is nothing to be proud of, that statement, as naked as it may be, has to be considered in the context of the entire record, specifically what Judge Reel was concerned about. And again, not to beat a dead horse, but it's the only thing he was concerned about. And Judge Reel, again, addressed this specific informant. How did he get involved? How did he go from the Sheriff's Department to the ATF? What kind of compensation did he receive? The government acknowledged throughout the pre-plea hearing on the entrapment defense and in their sentencing position that there was a transaction, at least one, we should guess more than one, where there were guns for drugs exchanged through a middleman between this informant that Judge Reel found to be the reason for his 3553 analysis granting this variance and Mr. Davis. So if we get down to credibility, which is where I think you're going, Judge Smith, and if Judge Reel has to draw, has to decide who's telling the truth, is it the statements with respect to the business of being involved in guns as set forth in the factual basis, or is there a reason for the variance based upon the conduct of this informant, then I don't see those as being competing because the factual basis is merely to get through the guilty plea, not to set forth a sentencing position with respect to the application of the 3553 factors. But then we get to the abuse of discretion standard. I think, as you suggested, we ought not to have abuse of animals here and beat a dead horse. I appreciate that, Your Honor. Mr. Robinson, the reason I thought you were going to agree that it's going to have to be remanded, the court said things that you recognize it doesn't have to say when he, and the facts he recited are just not supported by this record. Isn't that pretty much the case? Well, my position would be that if we take what Judge Reel had to say as reasons as opposed to facts, if they're facts, then yes, it has to go back. But if we take what Judge Reel said as reasons as opposed to facts. I think your argument is that reasons untethered by facts are valid. Reasons tethered to the entire record. Thank you. But not to beat a dead horse. Not to beat a dead horse. Thank you very much, Your Honor. All right. Do you have anything to say? Do you want to use your rebuttal time? And if we remand and the case goes back to Judge Reel, you realize you're going to have an interesting day. It's always an interesting day in Judge Reel's courtroom, Your Honor. But hopefully, you know, if it's remanded and the court is told these are clearly erroneous facts, then the court will look to the larger record and see that there was not only no entrapment but no imperfect entrapment. So I just want to briefly address the guns for drugs transaction because my opposing counsel brought it up. The whole narrative of that argument is contradicted by the defendant's own sentencing letter, a letter that presumably is submitted in mitigation. In that letter, he says it was my brilliant idea to sell guns, so I reached out to my friend Jimmy, and that's ultimately how I get in contact with this person who's not even a confidential informant at that point. He's just a private citizen. There can't be any government inducement without the government. But not just that. He says, and I didn't want to sell the guns for drugs. I wanted to sell it for cash, but he was only able to deal with drugs. And I sold most of the drugs to make money, and I sold them immediately. And so I think that just completely contradicts the suggestion that the informant was holding drugs over him to get him to sell guns, was feeding his methamphetamine addiction, and is really fatal to his claim. The last thing I'll say is just that the ultimate question in any of these cases involving procedural error at sentencing is whether the appellate court and the public can be satisfied that sentencing occurred in a reasonable way. And I would submit that the reliance on clearly erroneous facts that contradict defendant's guilty plea, that contradict all of the evidence in the case, and that contradict the district court's own findings just two years before, cannot promote the perception of fair sentencing and requires that the matter be vacated. Thank you. Thank you. With that, the court stands adjourned until tomorrow morning at 9 o'clock.
judges: Farris, Bea, M. Smith